**Steven BRYE, Plaintiff–Appellant,**

v.

**William BRAKEBUSH, Nancy Brakebush, Carl Brakebush, and Brakebush Brothers, Inc., Defendants–Appellees.**

**No. 93–2833.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1994.

Decided Aug. 22, 1994.

Jacqueline Macaulay, Jacobson & Macaulay, Madison, WI (argued), for plaintiff-appellant.

Dennis M. White, Brennan, Steil, Basting & MacDougall, Madison, WI (argued), for defendants-appellees.

Before FLAUM and ROVNER, Circuit Judges, and WILLIAMS, District Judge.*

ANN CLAIRE WILLIAMS, District Judge.

Steven Brye appeals from a judgment of the United States District Court for the Western District, Shabaz, J., granting defendants' motion for summary judgment and dismissing Brye's Title VII employment discrimination claim. The district court held that Brye was precluded from litigating his Title VII claim in federal court under the common law doctrine of *res judicata*. Specifically, the court held that a Wisconsin Circuit Court's dismissal of Brye's petition for review of an adverse decision by the Wisconsin Labor and Industry Review Commission ("LIRC") barred any further litigation of his discrimination claim. The Circuit Court's dismissal order, which was entered at Brye's request, reads as follows:

> The Court hereby dismisses th[e] Petition with prejudice to further proceedings in regards to the charge of discrimination made before the Equal Rights Division, Department of Industry, Labor and Human Relations but without prejudice to any

right the petitioner may have to pursue his claims in federal or state court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*

(May 11, 1993 Dismissal Order at 1). Finding that the state court order was not on the merits and therefore not entitled to any preclusive effect under Wisconsin law, we reverse.

## I. Background

On December 29, 1987, Steven Brye was fired from his job as a financial controller at Brakebush Brothers, Inc., a family-owned poultry processing company in Westfield, Wisconsin. Brye had worked at the company for more than seven years at the time of his discharge. Several months after his termination, Brye filed a charge of discrimination with the Equal Rights Division of the Wisconsin Department of Labor, Industry and Human Relations ("ERD"). Brye alleged that the company's owners, Bill, Nancy, and Carl Brakebush, harassed him throughout his employment with the company and ultimately discharged him because of his religious beliefs.

According to Brye's complaint, the Brakebushes are active members of the Lutheran Church and believe that the Bible is the literal truth and the word of God. Brye, on the other hand, believes in a "universal god" but is not a Christian and does not attend church. Brye complains that the Brakebushes harassed him because they believed that he was an atheist and failed to accept Jesus Christ in his life as they did. Brye alleged that religion was a substantial factor in the Brakebushes' decision to fire him, and that he would not have been terminated but for his failure to accept Jesus Christ.

Following a short investigation, an ERD investigator issued an "Initial Determination" finding probable cause to believe that Brakebush Brothers, Inc. had discriminated against Brye in violation of Wisconsin law. An administrative hearing was held in May and August 1990, and on September 11, 1991, Administrative Law Judge Alice E. DeLaO

---

* The Honorable Ann Claire Williams, District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

found that the Brakebushes had harassed and later fired Brye because of his religious beliefs. Brakebush Brothers, Inc. filed a timely petition for administrative review by the LIRC. After consulting with ALJ De-LaO on the issue of witness credibility, the LIRC made an independent finding of credibility, issued findings of fact at odds with the ALJ's, and reversed the ALJ's conclusion of law.

One month later, on January 11, 1993, Brye filed a timely petition for judicial review of the LIRC's decision under Wis.Stats. §§ 227.52 and 227.53. In his brief on appeal, Brye asserts that he only filed the state court petition because he had not yet received a "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC"). The right to sue letter was issued on March 17, 1993. On May 6, 1993, plaintiff filed the instant suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* in the Western District of Wisconsin. He moved to voluntarily dismiss his Petition for Judicial Review then pending in Marquette County Circuit Court that same day. No briefing schedule had been set, nor any proceedings held in state court, before Brye filed his motion to voluntarily dismiss.

Although Brye requested dismissal of his Petition for Review without prejudice, he acknowledged in his motion that under the Wisconsin Fair Employment Law, his petition for review could not be refiled. Plaintiff explained that he was requesting a voluntary dismissal without prejudice so that he could retain his right to pursue his claims in federal and/or state court under Title VII. Brye submitted a proposed order of dismissal which read as follows:

Petitioner Steven Brye, having made a motion for dismissal without prejudice of the above-captioned Petition for Review of a Decision of the Labor and Industry Commission;

The Court hereby dismisses that Petition with prejudice to further proceedings in regards to the charge of discrimination made before the Equal Rights Division, Department of Industry, Labor and Human Relations but without prejudice to any right the petitioner may have to pursue his

claims in federal or state court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*

Brakebush Brothers, Inc. responded with its own proposed order of dismissal. This proposed order states:

Petitioner, Steven Brye, having made a Motion for Dismissal without prejudice of the Petition for Review of a decision of the Labor and Industry Review Commission and having acknowledged that he cannot reinstate the petition, and this Court having duly considered the issue;

NOW THEREFORE ORDERS:

That the Petition for Review be, and it hereby is, dismissed with prejudice.

On May 11, 1993, the Marquette County Circuit Court entered Brye's proposed order of dismissal.

Defendants in this action then moved for summary judgment on the ground that the state court's dismissal of Brye's Petition for Review barred him from relitigating his employment discrimination claim in federal court. Concluding that Wisconsin courts would consider Brye's voluntary dismissal a final decision on the merits, and therefore entitled to preclusive effect, the district court granted defendants' motion for summary judgment.

## II. Analysis

The issue on appeal is a narrow one—whether the district court erred in holding that the state court's dismissal of Brye's Petition for Review bars a federal court from hearing his Title VII claims. Our analysis begins, as it must, with a review of the controlling Supreme Court cases of *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), where the Court explored the complex interplay between Title VII, the "full faith and credit" requirements of 28 U.S.C. § 1738, and the common law doctrine of *res judicata.*

In *Kremer,* plaintiff brought a Title VII action in federal court after a New York state court had affirmed a New York State

Division of Human Rights determination that there was no probable cause to believe his employment discrimination claim. In affirming the lower court's dismissal of Kremer's complaint on *res judicata* grounds, the Court held that Congress did not intend to carve out a special Title VII exception to the general rule under 28 U.S.C. § 1738 [1] requiring federal courts to give the same preclusive effect to a state court judgment that the judgment would be given by other courts in that state. *Kremer*, 456 U.S. at 476, 102 S.Ct. at 1894-95. In a footnote in the opinion, the Court stated in dictum that it is nevertheless "clear that unreviewed administrative determinations by state agencies ... should not preclude [federal court] review even if such a decision were to be afforded preclusive effect in a State's own courts." *Id.* at 470 n. 7, 102 S.Ct. at 1892 n. 7.

Four years later in *Elliott*, the Supreme Court expressly found that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims. *Elliott*, 478 U.S. at 796, 106 S.Ct. at 3224-25. Citing the language and legislative history of Title VII as well as the Court's prior ruling in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976),[2] the Court held that a plaintiff who pursues a Title VII action in federal court following an unreviewed state administrative determination is entitled to a trial *de novo*. *Elliott*, 478 U.S. at 795-96, 106 S.Ct. at 3224-25.

A large majority of the cases applying the Court's holdings in *Kremer* and *Elliott* fall into two distinct categories: those involving litigants who have foregone state court review altogether [3] and those involving litigants who have participated in state court proceedings where the state court has clearly considered the merits of the underlying discrimina-

tion claims.[4] In accordance with the Court's rulings, those plaintiffs with cases falling in the former category are generally held to be entitled to a trial *de novo* on their Title VII claims, and those with cases falling into the latter group are barred from relitigating their claims in federal court. *Compare Abramson*, 808 F.2d at 1309 *with Pirela*, 935 F.2d at 913.

However, a small minority of cases, including this one, seem to fall somewhere in between. In these cases, plaintiffs have pursued state court review of adverse administrative decisions, had their petitions dismissed by the state court, yet never obtained any substantive state court review of their underlying discrimination claims. The dismissals in these cases often result from procedural flaws in the litigants' petitions that have little or nothing to do with the actual merits of their claims. *See, e.g., Bray v. New York Life Ins.*, 851 F.2d 60 (2nd Cir.1988) (state court petition dismissed for failure to comply with 60-day statute of limitations on appeals from adverse administrative decisions); *Kirkland v. City of Peekskill*, 828 F.2d 104 (2nd Cir.1987) (state court suit dismissed for failure to name City as a party). In other cases more closely analogous to the case at hand, the state court dismissals have resulted from the litigant's own conduct or strategy in prosecuting the appeal. *See, e.g., Glass v. General Casting Corp.*, 660 F.Supp. 554 (E.D.Wis.1987), *rev'd without op*, 845 F.2d 1023 (7th Cir.1988) (dismissal based primarily on plaintiff's failure to prosecute); *DeLaine v. Western Temporary Services (USA), Inc.*, 32 BNA Fair Empl.Prac.Cas. 593 (D.N.J.1983) (plaintiff withdraws her petition in order to proceed in federal court).

Litigants in some of these cases have argued, as does Brye, that by giving preclusive effect to these types of state court decisions,

---

**1.** 28 U.S.C. § 1738 provides that: "[t]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...."

**2.** In *Chandler*, the Court held that a federal employee whose discrimination claim was rejected by her employing agency after an administrative hearing was entitled to a trial *de novo* in federal

court on her Title VII claim. 425 U.S. at 848, 96 S.Ct. at 1953-54.

**3.** *See, e.g., Abramson v. Council Bluffs Comm. Sch. Dist.*, 808 F.2d 1307 (8th Cir.1987).

**4.** *See, e.g., Pirela v. Village of North Aurora*, 935 F.2d 909 (7th Cir.1991); *Lolling v. Patterson*, 966 F.2d 230 (7th Cir.1992).

the court would in effect be granting preclusive effect to an unreviewed administrative decision in violation of *Elliott* The argument has some, albeit superficial, appeal. In *Bray,* the *pro se* plaintiff missed the New York state filing deadline by one day. *Bray,* 851 F.2d at 62. In *Kirkland,* the plaintiff's case was dismissed "on the merits" for failure to join a necessary party. *Kirkland,* 828 F.2d at 109. Like Brye himself, these plaintiffs failed to receive anything approaching a review on the merits by the state courts that dismissed their cases. One may wonder, as did the dissent in *Kremer,* whether granting preclusive effect to state court judgments involving limited or no review of the merits of plaintiffs' claims is an effective means of securing the important federal rights at issue in Title VII cases.

> In Title VII, Congress wanted to assure discrimination victims more than bare due process; it wanted them to have the benefit of a vigorous effort to eliminate discrimination. By affording some discrimination complainants less, the Court contravenes the congressional intent behind Title VII.

*Kremer,* 456 U.S. at 498–99, 102 S.Ct. at 1906–07, Blackmun, J., dissenting.[5]

Yet as the Second Circuit held in *Bray,* the Court's analysis in *Elliott* simply does not apply in a case like this one where a state court has entered a judgment against the plaintiff. *Bray,* 851 F.2d at 63. Once a state court judgment has been entered, 28 U.S.C. § 1738 requires federal courts to afford that judgment the same preclusive effect to which it would be entitled in that state's courts. *Kremer,* 456 U.S. at 476, 102 S.Ct. at 1894–95.[6] The *Kremer* Court expressly held that Congress did not create any exceptions to this statutory mandate through its enactment of Title VII:

It is sufficiently clear that Congress, both in 1964 and 1972, though wary of assuming the adequacy of state employment discrimination remedies, did not intend to supplant such laws. We conclude that neither the statutory language nor the congressional debates suffice to repeal § 1738's longstanding directive to federal courts. 456 U.S. at 476, 102 S.Ct. at 1895. Thus, we must now look to Wisconsin law to determine what, if any, preclusive effect the courts of that state would give the Circuit Court's dismissal of Brye's case. *Cf. Welch v. Johnson,* 907 F.2d 714, 719 (7th Cir.1990).

Under Wisconsin law, a final judgment on the merits in a court of competent jurisdiction is conclusive in all subsequent actions between the same parties or their privies as to all matters which were litigated or which might have been litigated in the former proceedings. *De Pratt v. West Bend Mutual Ins. Co.,* 113 Wis.2d 306, 334 N.W.2d 883, 885 (1983). In order for the first action to bar the second, there must be an identity of parties and an identity of the causes of actions or claims in the two cases. *Id.; Parks v. City of Madison,* 171 Wis.2d 730, 492 N.W.2d 365, 368 (Ct.App.1992). Wisconsin has adopted the "transactional analysis" set forth in *Restatement (Second) of Judgments* § 25 for determining the identity of the causes of actions. *De Pratt,* 334 N.W.2d at 885. Under this approach, a claim can be barred even though the plaintiff seeks remedies or forms of relief that were not demanded in the former action. "[A]ll claims arising out of one transaction or factual situation are treated as being part of a single cause of action, and they are required to be litigated together." *Parks,* 492 N.W.2d at 368.

Accordingly, in order for the Wisconsin court's dismissal of Brye's petition to bar the current action, there must be: 1) a final

---

**5.** The dissent in *Kremer* was primarily concerned with the limited standard of review on the typical petition for state court review of an adverse agency determination. "Though state courts may be diligent in reviewing agency dismissals for no probable cause, the nature of the agency's deliberations combined with deferential judicial review can lead only to discrimination charges receiving less careful consideration than Congress intended when it passed Title VII." *Kremer,* 456 U.S. at 507, 102 S.Ct. at 1911.

**6.** No preclusive effect, however, will be afforded to a state judgment that fails to "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause". *Kremer,* 456 U.S. at 481, 102 S.Ct. at 1897. Appellant Brye does not assert any violation of his procedural due process rights here.

judgment on the merits in the state action; 2) an identity of the cause of action in the state proceedings and this suit; and 3) an identity of parties or their privies in the two suits. *Pliska v. City of Stevens Point,* 823 F.2d 1168, 1173 (7th Cir.1987). The last two elements are not at issue. There is an identity of the parties or their privies in the two suits. *See* R.23 at 9 (citing *Aetna Casualty & Su. Co. v. Kerr–McGee Chemical Corp.,* 875 F.2d 1252, 1259 (7th Cir.1989)). It is also clear that the two suits arose out of the identical factual situation or transaction. Less obvious, however, is whether Wisconsin would consider the dismissal order entered by the Circuit Court under the special circumstances of this case to be a judgment on the merits barring the subsequent litigation of plaintiff's Title VII claims. Because we believe that Wisconsin would not characterize the dismissal at issue here as a judgment on the merits for *res judicata* purposes, we reverse.

■ It is well established in Wisconsin law that a judgment on the merits may be entered without a trial. *De Pratt,* 334 N.W.2d at 885; *A C Storage Co. v. Madison Moving & Wrecking Corp.,* 38 Wis.2d 15, 155 N.W.2d 567, 569 (1968). Judgments on the merits can be based on a court ruling on a dispositive motion, such as one for summary judgment, or simply on a stipulation to dismiss submitted by the parties. *In re Paternity of M.T.H.,* 140 Wis.2d 843, 412 N.W.2d 164, 165 (Ct.App.1987); *Great Lakes Trucking Co. v. Black,* 165 Wis.2d 162, 477 N.W.2d 65, 67 (App.1991). To qualify as a judgment on the merits under Wisconsin law, however, the court order of dismissal must be intended as a final determination of the rights of the parties. *Werner v. Riemer,* 255 Wis. 386, 39 N.W.2d 457, 465 (1949); *Great Lakes,* 477 N.W.2d at 67.

■ Where, as here, the dismissal is voluntary, Wisconsin law presumes that the dismissal is not on the merits "[u]nless otherwise specified in the order...." Wis.Stat. § 805.04(2). *See also Marshall–Wisconsin Co. v. Juneau Square Corp.,* 139 Wis.2d 112, 406 N.W.2d 764, 773 (1987) ("[i]t is undoubtedly the law of this state that a seasonable voluntary dismissal by plaintiff of his cause of action, or a dismissal pursuant to a stipulation, is no bar to the bringing of a subsequent action for the same cause and between the same parties"). In dismissing Brye's petition, the Circuit Court did not expressly state that the dismissal was on the merits. The dismissal order did, however, provide that the dismissal of the petition was "with prejudice" at least with respect to any "further proceedings in regards to the charge of discrimination made before the Equal Rights Division...." Seizing on this "with prejudice" language, the defendants and the district court concluded that the state court's dismissal must be afforded preclusive effect because under Wisconsin law, a dismissal with prejudice is tantamount to a judgment on the merits. *M.T.H.,* 412 N.W.2d at 165; *In re Paternity of C.M.G.,* 166 Wis.2d 1052, 481 N.W.2d 708 (Ct.App.1992). *Cf.* 9 Charles Wright & Arthur Miller, Federal Practice and Procedure: Civil § 2367 (1971 & Supp. 1989).

Although we agree with the district court's general statement of Wisconsin law, we find its characterization of the state court's dismissal order troubling. As even a cursory review of the dismissal order makes clear, the Circuit Court's use of the words "with prejudice" with respect to its dismissal of Brye's petition was not intended as a final adjudication of the rights of the parties. In sharp contrast to the unqualified dismissal with prejudice at issue in *M.T.H.,* the dismissal order here was expressly entered "without prejudice" with respect to plaintiff's right to pursue related claims against defendant Brakebush.

Though already quoted in full, *supra,* the short dismissal order entered by the Circuit Court bears repeating here:

> The Court hereby dismisses th[e] Petition with prejudice to further proceedings in regards to the charge of discrimination made before the Equal Rights Division, Department of Industry, Labor and Human Relations but *without prejudice to any right the petitioner may have to pursue his claims in federal or state court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.*

(May 11, 1993 Dismissal Order at 1) (emphasis added). Ignoring the last three lines of the order, defendants argue that the mere use of the talismanic phrase "with prejudice" by the Circuit Court magically bars plaintiff from having his Title VII claims heard in federal court. Yet, as several courts have held, where doubt exists regarding the finality of a prior order of dismissal, the court may look beyond the words "with prejudice" to determine if the dismissal was meant to be conclusive. *See, e.g., Maryland v. Baltimore Transit Co.*, 38 F.R.D. 340, 343 (D.Md.1965) (examining circumstances surrounding entry of order to restrict preclusive effect of dismissal with prejudice against one defendant in multi-defendant suit); *Pueblo de Taos v. Archuleta*, 64 F.2d 807, 812 (10th Cir.1933) (ignoring "with prejudice" language where facts indicated that no decision on the merits was reached).[7] As the court explained in *Baltimore Transit*, as a general rule, "the words 'with prejudice' are not conclusive and have significance only in the light of the circumstances under which the dismissal took place." 38 F.R.D. at 343.

Here, we are presented with persuasive evidence that the court order dismissing Brye's petition was not intended to act as a decision on the merits barring future litigation of his Title VII claims in federal court. First and foremost, we have the plain language of the order, which expressly states that it is entered "without prejudice" to Brye's rights to proceed in either federal or state court on his Title VII claims. The manner in which the voluntary dismissal order was entered is also persuasive. As noted above, plaintiff submitted his draft dismissal order to the Circuit Court along with a short motion clearly explaining his purpose in voluntarily dismissing his petition for review. In the motion, Brye acknowledged that any future reinstatement of his petition for review would be barred by the statute of limitations, but requested a dismissal without prejudice to his Title VII claims so that he could pursue those claims in federal court. Defendant responded with its own draft order of dismissal which stated simply, "[t]hat the Petition for Review be, and it hereby is, dismissed with prejudice." Defendant's draft order omitted any reference to the effect that the dismissal might have on plaintiff's pending Title VII claims. Significantly, the Circuit Court chose plaintiff's draft order of dismissal, rejecting defendant's unqualified "dismissal with prejudice" and adopting plaintiff's draft order verbatim.

Defendant attempts to skirt around the significance of the "without prejudice" portion of the dismissal order by pointing out that the order was merely entered without prejudice to "any right" plaintiff may have had to pursue his Title VII claims. Thus, according to defendant, plaintiff assumed the risk that under Wisconsin law he might not have any such rights once the dismissal order was entered. (Def. Response at 6). The court rejects defendants' rigid interpretation of the doctrine of *res judicata* as applied by Wisconsin courts. As this court has previously explained, "Wisconsin law does not treat *res judicata* as an iron clad rule which must be implacably applied whenever its literal requirements are met, regardless of any countervailing considerations." *Patzer v. Board of Regents*, 763 F.2d 851, 856 (7th Cir.1985), (*citing Wendland v. Wendland*, 138 N.W.2d 185, 191–92 (1965) (making exceptions in child custody case) and *McCourt v. Algiers*, 4 Wis.2d 607, 91 N.W.2d 194, 196 (1958) (doctrine of *res judicata* based on proposition that repeated litigation of identical issues is undesirable where not necessary to prevent unfairness)). This general argument against the inflexible application of state law governing preclusion applies with special force in a case like this where many of the important state policies underlying *res judicata* (i.e., avoiding duplication, conservation of scarce judicial resources, comity) simply do not apply.[8] Thus, even if defendants'

---

**7.** Indeed, the *Pueblo de Taos* court observed that to properly determine the preclusive effect of a prior judgment, the court not only may, but "must inspect a judgment pleaded in bar, and if necessary explore the record, to ascertain what was determined by it." 64 F.2d at 812, *citing Swift v. McPherson*, 232 U.S. 51, 34 S.Ct. 239, 58

L.Ed. 499 (1914); *Larkin Packer Co. v. Hinderliter Tool Co.*, 60 F.2d 491, 495 (10th Cir.1932).

**8.** No proceedings had been held, nor briefing schedule set in state court prior to dismissal of the petition. As plaintiff's counsel observed at oral argument, the state court's investment in

reading of the Circuit Court's dismissal order were plausible, a dubious proposition at best, our ruling would be the same.

### III.   Conclusion

Finding that the Circuit Court's dismissal of Brye's petition does not qualify as a judgment on the merits barring future litigation of his Title VII claims, we REVERSE.   This matter is REMANDED for further proceedings consistent with this opinion.

Brye's case was largely limited to the cost of the     ink on the "filed" stamp.